237 P.2d 806

FLAHERTY v. INDUSTRIAL COM-
MISSION et al.
No. 5556.

Supreme Court of Arizona.
Nov. 26, 1951.

Scruggs, Butterfield & Rucker, Tucson, for petitioner.

Robert E. Yount, of Phoenix, for respondent Industrial Commission. Robert W. Pickerell and H. S. McCluskey, Phoenix, of counsel.

PHELPS, Justice.

This cause comes to us on a writ of certiorari.

The facts are that on May 26, 1949, while employed by Tom Flaherty doing business as Tom Flaherty's Furniture Company in Tucson, William E. Posey suffered an injury by accident arising out of and in the course of his employment. The injury consisted of a fracture of the navicular bone of the left wrist, also referred to as the carpal scaphoid. At the time the injury occurred Flaherty was not carrying industrial insurance although then employing three or more people. Immediately after learning of the injury he referred Posey to Dr. Robert W. Grant, an osteopathic physician and surgeon for examination and treatment. Dr. Grant in turn had Posey go to Dr. David Marcus, physician, for an X-ray picture of the injured wrist. Dr. Marcus made X-ray pictures thereof but neither he nor Dr. Grant discovered from an examination of the films made, any evidence of a fractured bone.

On the following July 2 Posey returned to the office of Dr. Grant and complained of suffering considerable pain in the injured wrist. Dr. Grant again directed that Dr. Marcus take X-ray pictures of the injured area, which he did. These films plainly disclosed a fracture of the navicular bone of the left wrist and with this lead the doctors were then able to see evidence of the fracture in the first film.

The latter films clearly showed a separation of the fragments of the edges of the break and on films made in October of that year there was marked evidence of nonunion indicating that surgery was the only remedy available.

Dr. Grant advised Posey, after reading the X-ray films made July 2 that a cast should be applied to his wrist. Posey stated at that time that he had to work to support his family and that he could not wear the cast and perform the work he was then doing which was pipe cutting and fitting, etc. There is a slight conflict in the evidence bearing on this particular incident. Regardless, however, of what may have

been said by Dr. Grant and Posey concerning the casting of the wrist, the fact remains that no cast was ever applied to it.

Dr. Grant made no report of Posey's injury to the Industrial Commission until August 3, 1949. He made this report upon the request of Flaherty or one of his employees. Posey had previously on July 23 filed his claim with the Industrial Commission for compensation.

The commission thereafter on September 28 made its finding and award allowing Posey accident benefits and compensation in such sum or sums as would thereafter be determined by the commission following the provisions of law as it applied to employers who failed to carry industrial insurance. See section 56–947, A.C.A.1939.

Upon application of Flaherty a rehearing was granted and at the hearing evidence was received and considered by the commission. On January 24, 1950, the commission made its findings and award for medical benefits, a per diem allowance to Posey pending an operation found to be necessary and for such sum or sums as should be determined by the commission pursuant to law for either temporary partial, permanent partial or permanent total disability, expressly retaining jurisdiction to make further orders in the premises.

A second rehearing was granted and on May 3, 1951, the commission made its findings and award allowing accident benefits to April 24, 1951, in the amount set forth therein and for compensation for *temporary* *disability* from July 13, 1950 to July 26, 1951, in the sum of $969.50 payable forthwith, and the additional sum of $119.12 per month for a period of 10 months as and for "a permanent partial disability equal to 20% functional loss of the left (minor) arm." This finding and award upon a third rehearing was affirmed by the commission on June 22, 1951. It is from this award that certiorari issued.

It is the position of Flaherty, first, that the commission erred in entering an award for permanent partial disability upon its findings for the reason that Posey is responsible himself for the nonunion of the fracture of the navicular bone of his left wrist because of his failure and refusal to follow the advice of Dr. Grant to the effect that it was necessary that a cast be applied to his wrist to get a proper healing of the fracture; and secondly, that the evidence does not support the commission's findings of a 20% permanent partial disability.

The proposition presented here is simply this. Posey contends that he was injured by accident arising out of and in the course of his employment with Flaherty; that the injury consisted of the fracture of the navicular bone of the left wrist; and that there now exists a nonunion of the fracture. Flaherty admits all of these facts but claims that Posey's present condition is due to his failure or refusal to follow the advice of Dr. Grant and have a cast applied to the fractured wrist, that if he

had followed that advice he would have secured a perfect union of the fracture.

It is provided in section 56–958, A.C.A. 1939, that "No compensation shall be payable for the * * * disability of an employee, * * * insofar as his disability may be aggravated, caused or continued by an unreasonable refusal or neglect to submit to or follow any competent and reasonable surgical treatment or medical aid."

■ We held in the case of Hunter v. Wm. Peper Construction Co., 46 Ariz. 465, 52 P.2d 472, that under this section of the statute the burden is on the injured employee to prove to the reasonable satisfaction of the triers of fact that not only the injury might have produced his disability but that it did produce it. Therefore the burden was upon Posey to show that the nonunion of the navicular bone of his left wrist was not due to his negligence or to his refusal to follow the advice of Dr. Grant or that he was reasonably justified in refusing to do so. The commission found that the condition of the fracture was not the result of his refusal to have the cast applied but "was due to or contributed to, by the mishandling or misinformation by Dr. Grant."

Presumably the commission's finding that the aggravation of Posey's condition was due to or contributed to by Dr. Grant is based upon the fact that Dr. Grant should have discovered the fracture to Posey's wrist on May 26 and then advised the applicant that a cast was necessary and that he should in any event have reported the injury to the commission on May 26 and certainly not later than July 2. Whether Posey would have permitted the cast on May 26 had it been recommended by Dr. Grant is not shown by the evidence. Therefore we believe when boiled down to its final analysis the question is, whether under the circumstances it was unreasonable for Posey to refuse to permit a cast to be applied to the fractured wrist on July 2 when Dr. Grant first discovered the fracture and advised the application of the cast.

■ We do not wish to be understood as holding that immediate economic necessity alone furnishes a reasonable excuse for an injured employee to refuse to accept recommended medical or surgical treatment, which may be reasonably expected to result in restoring, in a large measure at least, his earning capacity. But we do hold that if, coupled with such economic necessity, the treatment recommended is shrouded with doubt and uncertainty as to its efficacy or ultimate result as indicated in the instant case, it is not unreasonable for the injured employee to refuse such treatment. We believe this to be true even if the employee, at the time of the refusal, did not have actual knowledge of the fact that the results were uncertain.

In the instant case the evidence discloses that over five weeks elapsed between the date of the injury and the date when the application of a cast was recommended by Dr. Grant. Dr. Meade Clyne testified it was his opinion that after such a delay if a cast had then been applied there was not

more than a 10% chance that a union of the fracture would have resulted. Dr. Dixon testified that it was possible it could have healed; it was probable it would have healed; it had a 50% chance to heal; he couldn't say that it would have healed. He said a certain percentage of such breaks never heal, even if a cast is applied immediately. Dr. Clyne fixed this percentage at 20%. Dr. Dixon further testified that the average time of the healing process was 12 weeks; that sometimes it required 12 months and in this case he estimated it would have taken 4 months from July 2.

We believe under these circumstances it was not unreasonable for Posey to refuse the treatment offered and that the finding and award of the commission is supported by substantial evidence.

Award affirmed.

UDALL, STANFORD, DE CONCINI and LA PRADE, JJ., concur.